ROBERT ALEXANDER SMITH, A/K/A ROBERT SMITH ALEXANDER, ET AL. *v.* INDIANA STATE BOARD OF HEALTH, ET AL.

[No. 1-972A73. Filed February 13, 1974.]

*John D. Clouse,* Evansville, *Scales & Long,* Boonville, for appellants.

*Theodore L. Sendak,* Attorney General, *Robert F. Hassett,* Deputy Attorney General, *Robert H. Rideout,* Boonville, *Donald G. Hendrickson,* Boonville, *Edward A. Campbell,* Boonville, for appellees.

LOWDERMILK, J.—Plaintiffs-appellees herein are the plaintiffs named in the caption of this cause and will be hereinafter designated as "appellees." Those defendants-appellants named in the caption of this cause, namely, Robert Alexander

Smith, a/k/a Robert Smith Alexander, Tom Duncan, Alexander and Duncan Productions, Jack Frielinghausen and Harold Baker, will be hereinafter referred to as "appellants."

Appellees filed their verified petition for temporary restraining order and complaint for injunction in the Warrick Circuit Court on August 16, 1972, praying for the court to find that an emergency existed and to issue forthwith a restraining order prohibiting appellants Melvin O. Greer and Thelma G. Greer, husband and wife, from authorizing, allowing or permitting the appellants and other named defendants from entering upon their property for the purpose of conducting or participating in the "Erie Canal 'Soda' Pop Festival"; appellants Frielinghausen and Baker from permitting or allowing the other appellants and other named defendants from entering upon the said property of the said Greers or upon the property commonly known as Chandler Raceway Park for the purpose of conducting or participating in said "Erie Canal 'Soda' Pop Festival." The prayer for relief was further that there be no advertising or promoting or selling or giving of tickets or to invite persons or to employ or arrange for entertainment for or lease or otherwise authorize the construction of food and/or drink concessions at said festival. Further relief was asked in that the concessionaires not be permitted to operate food or drink concessions, performers were not to be permitted to perform, water was not to be transported to the area, and in fact any work to be done to further the festival was asked to be restrained and subsequently enjoined, all until such time as the health, safety, and traffic laws of the State of Indiana and County of Warrick had been satisfied. There was further relief sought by mandate for an order for the Indiana National Guard and Reserve Units, if mobilized, and Indiana State Police and all law enforcement officers of Warrick County, down to and including the Town Marshal of Chandler, Indiana, and the Prosecuting Attorney for the Second Judicial Circuit to take all steps necessary to enforce the order, all until further order

of the court. The prayer further requested the cause be set for hearing on temporary injunction.

The complaint was accompanied by supporting affidavits and by a "Certificate of Efforts to Give Notice to Defendants." Summons was issued on August 16, 1972, to the appellants and other named defendants to appear and was served by personal service on said appellants and other named defendants, or on their attorneys of record.

On the same day the court held an *ex parte* hearing in which it examined the complaint, affidavits, and heard evidence. A temporary restraining order was granted pursuant to the complaint and the appellants were restrained from conducting the festival. On August 17th the appellants' motion to dissolve the restraining order was overruled.

On August 22nd and 23rd, 1972, a hearing was had on the temporary injunction which had been sought by appellees. On August 25, 1972, the court made findings of fact, conclusions of law, and appropriate orders granting a temporary injunction pursuant to the complaint, over the objections of the appellants. This is an appeal from that interlocutory order.

Appellants timely filed their assignment of errors. We shall discuss the specifications of the assignment of errors argued by appellants and group them, where proper, as they apply to the issues set out herein. Rule AP. 8.3 (A) (7).

The first issue raised in the assignment of errors is that during the trial appellees introduced exhibits from other rock festivals held at the following locations, namely, Fremont, Indiana, in June, 1972, and Goose Lake, Michigan, in August, 1970, to show the relationship between rock festival concerts held at Fremont and Goose Lake and the proposed festival which was the subject of this action.

Appellants urgently contend that the case at bar was devoid of any evidence showing participation in the other named

festivals by any of the participating appellants in the case at bar.

The appellees offered into evidence from the Fremont and Goose Lake festivals a large number of exhibits, most of which were photographs of people; activities and doings of people; their behavior; their entertainment together; their housing; their sanitary, or lack of sanitary, conditions; their fresh water facilities; their trafficking in illegal drugs; sexual intercourse; and other various and sundry activities participated in by the persons attending said festivals, together with a number of photographs of trash piled high and literally acres of litter.

The evidence shows that the exhibits in question were all properly identified and pertinent before they were admitted into evidence. Hearsay evidence pertaining to some exhibits was properly excluded by the court on timely and proper objections by appellants.

Appellants contend that the exhibits in question and testimony of any activities carried on at other festivals were inadmissible in that said exhibits were not relevant to the action at bar. Appellants contend that the appellees did not show a substantial similarity between the other festivals and the proposed festival in relation to the planning, promotion, and presentation. The basis for the contention is that since the appellants were not connected with the other festivals, the said festivals would not be relevant to the case at bar.

Appellants rely on the case of *Lever Bros. Co.* v. *Atlas Assurance Co.* (1942), 131 Fed. 2d 770, wherein the court discussed the admissibility of evidence of similar occasions and applied the test on said admissibility, in that case, that the conditions must be the same in the similar occasions relied upon. However, the court, in *Lever Bros., supra*, prefaced its remarks by saying: "There are no hard or fast rules as to what degree of similarity there must be to make the evidence admissible."

Judge Sharp of this court, in the case of *Murphy* v. *Indiana Harbor Belt R.R. Co.* (1972), 154 Ind. App. 103, 289 N.E.2d 167, discussed the admission of evidence of similar transactions as follows:

> "The admission of similar acts, occurrences or transactions as proof that a particular act was done or that a certain occurrence happened generally rests in the discretion of the trial court. . . . [Cases cited omitted.]"

In oral argument appellants pointed out to the court that a rock festival was something new and undefined as of this date. Appellees contend that the relevancy of these exhibits was not to prove that the defendants were associated with the previous festivals and were not indices of conduct which might occur at Chandler, but, rather, were simply an attempt to show the trial court what a rock festival, in fact, was.

Appellees also contend that these exhibits tended to support the allegations made in the complaint and with this contention we agree.

In the case of *Evansville School Corp.* v. *Price, etc.* (1965), 138 Ind. App. 268, 271, 208 N.E.2d 689, this court discussed the admissibility of exhibits and photographs as follows:

> "It is the rule in Indiana that the admission or rejection of photographs in evidence lies largely within the discretion of the trial court, and will not be disturbed unless an abuse of discretion is shown to have occurred. . . . It is also the law in this state that in order for a photograph to be admissible in evidence, it must first be accepted by the trial court as *material and relevant*, and must tend to prove or disprove some material fact in issue. . . . [Cases cited omitted.]" (Their emphasis.)

Since the admissibility of the exhibits in question was a question for the court in the exercise of its sound judicial discretion, it is our opinion that the trial court committed no abuse of its discretion when it admitted into evidence the exhibits in question. Thus, no error was committed in admitting the exhibits.

Further, even if error was committed in the admission of the exhibits in question, it is our opinion that such error would be harmless. The hearing was directed to the trial judge and no jury was involved to be prejudiced. In our opinion, the trial court would properly consider the exhibits and determine their propriety and weight in relation to legal and evidentiary principles and the trial judge would not be unduly prejudiced by the exhibits. We note that the trial judge would necessarily have viewed the exhibits in either a court trial or a jury trial before making any ruling as to their admissibility. Additionally, as will be seen later in this opinion, the evidence relating solely to the Chandler situation was sufficient to sustain the granting of the temporary injunction.

The second issue raised in the assignment of errors relates to the temporary restraining order which was granted August 16, 1972. Appellants first contend that the trial court erred when it held an *ex parte* evidentiary hearing before granting said order. Appellants contend that Rule TR. 65(B) which controls temporary restraining orders does not provide for any evidentiary hearing.

It is our opinion that this contention is without merit. Although Rule TR. 65(B) does not specifically provide for a hearing before granting a restraining order, neither does it prohibit the same. Appellants have urged with fervor in this appeal that restraining orders and injunctions are extraordinary remedies and should be issued only when absolutely necessary. Thus, we fail to see how the appellants could be harmed in this case by the trial court's conducting an evidentiary hearing prior to granting the order. It would seem that rather than being harmed, the appellants were benefited by the trial court's obvious attempt to get all of the facts before it prior to making a decision.

Appellants next contend that the provisions of Rule TR. 65(B) were not met by the appellees in that there was im-

proper notice and that the "Certificate of Efforts to Give Notice to Defendants" is defective. The certificate shows on its face that many of the defendants were given oral notice at least four hours before the complaint was filed, either personally or through their attorneys. Rule TR. 65(B) states that temporary restraining orders may be granted without written *or* oral notice. Thus, the appellants who were given oral notice cannot be heard to complain. These appellants further contend that the four hour telephone notice was insufficient, but we find no authority that would support such a proposition.

The only defendants who were not given oral notice were performers, unknown ticket sellers, and unknown participants and attendants. The certificate stated what efforts, if any, had been made to give notice and it is our opinion that said certificate was sufficient to satisfy the requirements of Rule TR. 65(B)(2) that the reasons be given why such notice should not be required. The certificate referred to the complaint and the impending irreparable harm and the complaint shows that the whereabouts of the performers and unknown ticket sellers, participants and attendants, could not be ascertained. Thus, no error was committed relating to the notice requirements of Rule TR. 65(B).

Appellants next contend that the requirements of Rule TR. 65(C) wherein security is required to be given by the applicant before a restraining order or injunction is issued, were not met. Four of the appellees who must be considered individuals were not required to post bond. The appellants contend that this failure constitutes reversible error. Appellees contend that said four appellees were nominal plaintiffs and that any error would be harmless.

We note that Rule TR. 65(C) does not require that governmental organizations be required to give security, but does state that such governmental organizations shall be responsible for costs or damages that might be incurred or suffered by any party having been wrong-

fully enjoined or restrained. In addition to the four appellees who were not required to give security, we note that several governmental organizations were also appellees, including the Indiana State Board of Health, Indiana State Police, the Warrick County Board of Health, the Board of Commissioners of Warrick County, and the Board of Trustees of the Town of Chandler. It is our opinion that since said governmental bodies are not required to give bond and are not immune from suit or liability in a case such as this if they are proved to be wrong, that no error was committed in not requiring the aforesaid four appellees to give security at the time of filing their complaint. Further, if any error was committed it was harmless.

The last contention under this issue is that certain procedural requirements relating to the form of the order and the contents of the order were not followed. It is our opinion that any such errors, if they exist, are harmless. Within six days after the granting of the temporary restraining order a full evidentiary hearing was held as required by Rule TR. 65 to determine whether a temporary injunction was issued and the finding and judgment were materially the same as the temporary restraining order and based upon the same reasons. We find that no injury was caused the appellants by any of the alleged procedural errors in the restraining order.

The third issue raised by the assignment of errors is that the decision of the court in granting the temporary injunction was not supported by sufficient evidence upon all necessary elements of the complaint as set out in court's findings of fact numbered 4, 5, 6, 8, 9, 15, 16, and 18, and further findings of fact numbered 1, 2, and 3. We, like appellants, react to the "further" findings as actually being conclusions based on the above mentioned findings of the trial court.

Findings of fact numbered 4, 8, and 9 were not argued in appellants' brief, nor in oral argument, and are therefore waived.

A careful examination of the voluminous record in this cause together with having heard well reasoned and well presented arguments on the same, leads us to the inescapable conclusion that there was sufficient evidence presented to the trial court to sustain his findings of fact, including findings numbered 5, 6, 15, 16, and 18, and the "further" findings of fact numbered 1, 2, and 3.

Appellants also contend under this issue that the granting of the temporary injunction was not supported by sufficient evidence on all elements of the complaint, particularly as to whether the proposed festival would cause irreparable injury. Appellants contend that no irreparable harm is caused by congested roads, that disease has not been a problem in Indiana, and that other events which have unruly crowds, drunkenness, and drug abuse are allowed to take place in Indiana.

Appellants rely on the case of *Spurgeon* v. *Rhodes* (1906), 167 Ind. 1, 7, 78 N.E. 228, as follows:

". . . The mere apprehensions or fears of a complainant, unsustained by fact, do not constitute a sufficient ground for the interference of equity by injunction. Not the complainant, therefore, but the court, must determine that a wrong is about to be committed which will be irreparable before the relief will be granted. . . ."

Appellants point out that a lawful business may not be enjoined merely because it may become a nuisance unless the injury is inevitable. It is argued that the extraordinary remedy of an injunction will not be granted unless the reasons are strong and weighty and then only after careful consideration of the possible consequences.

The authority for the granting of the injunction is based primarily on the powers granted to the Board of Health to prevent the spread of disease and to stop epidemics. The record discloses that the facilities at Chandler were conducive to the spread of disease due to the lack of a proper sanitation system, an inadequate supply of water, and the presence of

stagnant water, larvae, mosquitoes, and rats. The evidence most favorable to the State is that these conditions could result in irreparable injury.

The evidence of a monumental traffic problem establishes that irreparable injury could result to those attending the festival and residents of the area due to the interference with and unavailability of adequate police, fire, and emergency services.

Appellants' comparison of the proposed festival to strip mining and the Indianapolis "500" automobile race is not well taken. The grounds for injunctive relief are based on the problem alleged in the complaint and we see little comparison as suggested by appellants between the problems in the case at bar and those in appellants' suggested examples.

The granting of an injunction was discussed by this court in the case of *Hickey* v. *Hickey* (1973), 156 Ind. App. 610, 298 N.E.2d 29, as follows:

". . . The granting or refusing to grant an injunction in Indiana is within the sound discretion of the trial court, and this Court on appeal will not reverse such judgment unless there has been a clear showing of abuse of discretion. . . . [Cases cited omitted.] . . . *Irreparable injury* does not necessarily mean that the injury must be very great. . . . [Cases cited omitted.]" (Their emphasis.)

An examination of the record discloses sufficient evidence on all necessary elements of the complaint to sustain the judgment of the trial court and we find no abuse of discretion.

Appellants also contend that the appellees were barred from bringing their complaint by the equitable principle of laches. Appellants argue that their intention to promote a festival was known to appellees in early summer of 1972 but that appellees waited until great sums of money had been expended before bringing their action. However, the record discloses that the action was not commenced until the likelihood of irreparable injury became acute. Appellees

waited until it was definite that the festival would be held. Appellees would have had no cause of action until such time they could determine the festival was actually about to be held. *Spurgeon* v. *Rhodes, supra.* We find no laches in this case.

The final issue raised by the assignment of errors is whether the granting of the temporary injunction violated certain constitutional rights of the appellants. Appellants first contend that they had a constitutional, statutory right to conduct business. They argue that the Civil Rights Acts, including 42 U.S.C.A. § 1981 and 42 U.S.C.A. § 1982, prohibit the interference with business rights and may not be discriminatory. Appellants urge that the appellees are trying to deny the constitutional rights of the appellants by this injunction.

We see no application of the so-called Civil Rights Acts as there is absolutely no indication of any racial or other types of discrimination. The evidence showed that the business sought to be conducted by the appellants created a condition which would result in irreparable injury to those attending the festival and those residing in the area for reasons of health hazards, and unavailability of adequate police, fire, and emergency services. The trial court had the right and duty in a valid exercise of the police power of the State to protect the rights of its citizens by enforcing health standards established by the legislature. Our Supreme Court held, in *Lawton* v. *Steele* (1884), 152 U.S. 133, 14 S.Ct. 499, 38 L.Ed. 385, that police power of the states is universally conceded to include everything essential to public morals, safety, and health and, the state may interfere whenever the public interest demands it, and this is basically the job of the legislature to determine what the interests are and what measures are required to protect those interests.

It is our opinion that the trial court did not unconstitutionally infringe upon the appellants' right to conduct their business when it granted the temporary injunction.

Appellants next contend that the granting of the temporary

injunction violated their constitutional rights under the First Amendment, that being the right of the people peaceably to assemble. This right is applicable to the States under the Fourteenth Amendment to the United States Constitution. Appellants urge that the young people of America have a constitutional right to assemble at rock festivals and "do their thing." The appellants contend that this right may be restricted only in the presence of a grave and immediate danger and that a clear public interest must be threatened. We would first point out that the 'young people of America' are not parties to this action and have not claimed that their constitutional right of freedom of assembly has been breached, but, more important, even under appellants' own tests it is clearly apparent that the trial court acted properly in granting the temporary injunction. The evidence shows a clear and present danger which was grave and immediate to the public interest on the basis of health hazards, and the interruption of police, fire, and emergency services. Thus, no constitutional right of assembly was unjustly infringed upon.

Finally, appellants contend that the granting of the temporary injunction was a violation of the interstate commerce clause under Article I, § 8 of the Constitution of the United States. This same argument was presented to this court in the case of *Smith et al.* v. *Indiana State Board of Health et al.* (1973), 158 Ind. App. 445, 303 N.E.2d 50. This court held as follows:

> "The basis of the restraining order was that the festival would be a danger to the safety and health of the citizens of Posey County, the State of Indiana, and persons attending the festival.
>
> It is stated in 15 I.L.E., Health and Safety, § 1, p. 127, that:
>
> 'The power of the Federal government to regulate interstate commerce does not disable the State from adopting reasonable measures designed to secure the health and safety of its people, even though the legislation might indirectly affect the commerce of the country.' " See, also, *Lawton* v. *Steele, supra.*

· It is our opinion that exactly the same reasoning applies in the case at bar and we find no constitutional infirmity.

Judgment affirmed.

Robertson, P.J. and Lybrook, J., concur.

NOTE.—Reported at 307 N.E.2d 294.