**Thomas KESTER and Marilyn Kester, Appellants,**

v.

**Martin Thomas BRUNS, Appellee.**

No. 66928.

Supreme Court of Iowa.

Nov. 24, 1982.

Rehearing Denied Jan. 13, 1983.

Denver D. Dillard and Marshall G. Hardesty, Jr., Cedar Rapids, for appellants.

Gregory M. Lederer and Robert M. Jilek of Simmons, Perrine, Albright & Ellwood, Cedar Rapids, for appellee.

Considered by LeGRAND, P.J., and UHLENHOPP, HARRIS, McCORMICK and McGIVERIN, JJ.

McCORMICK, Justice.

This case involves challenges to trial court rulings on motions for mistrial and new trial and objections to instructions in a negligence action arising from a car-pedestrian accident. We find no merit in the challenges and therefore affirm the trial court.

Plaintiffs Thomas and Marilyn Kester, husband and wife, were driving east on Blairs Ferry Road in Cedar Rapids, in the early morning of January 8, 1977, when their car stalled in the extreme right lane of the four-lane street. It was cold with blowing snow, and the street was icy. A motorist stopped to assist them. He and Thomas Kester attempted to push the Kester automobile, steered by Marilyn Kester, across the left three lanes of the street onto the opposite shoulder. The men were unable to push the car up an incline in the two westbound lanes. They left the car straddling those lanes and walked to the shoulder.

A westbound automobile approached the scene and was unable to stop. It struck the Kester automobile and spun it around 180°, moving it partially over the centerline. Thomas Kester helped his wife from the car to the side of the road and then, after a short delay, went back to the car apparently to retrieve a pool cue. Just as he started to open the passenger side door, a westbound automobile driven by defendant Martin Thomas Bruns came upon the scene and struck and severely injured Mr. Kester.

In this action plaintiffs alleged Thomas Kester's injuries were caused by defendant's negligence. Thomas asked damages for the injuries and Marilyn sought recovery for loss of consortium and emotional distress. Defendant asserted a defense of contributory negligence. After trial, the

jury returned a verdict for defendant on both claims, and plaintiffs appealed. The questions relate to the court's refusal to grant a mistrial or new trial based on statements by defense counsel in opening statement and the court's rulings on instructions. Where plaintiffs' contentions on appeal differ from their objections at trial, we limit our consideration to the issues on which they preserved error at trial.

I. *The opening statement.* During his opening statement, defense counsel Robert M. Jilek referred to police investigation of the accident on at least two occasions. Once he said:

> The police were out there from different jurisdictions—this is near Marion and Hiawatha and so forth—and did an investigation,—and they felt that Mr. Bruns was where he should be and Mr. Kester was where he should not have been and that Mr. Bruns did all he could to avoid the accident.

He also said:

> I believe the evidence will show a tragedy of errors and fault by the plaintiffs, that the conclusion of the officers is correct, that Marty did all he could to avoid the accident, was where he should have been, Mr. Kester was where he should not have been.

Immediately following the opening statement, plaintiffs moved for mistrial based on the alleged impropriety in defense counsel's opening statement. The trial court overruled the motion. When the issue was raised again in plaintiffs' posttrial motion for new trial, the court found that the statements were improper but nonprejudicial and that the result would have been the same even if they had not been made. Plaintiffs contend the rulings were erroneous.

■ After the jury is sworn, each party is permitted to make an opening statement. Iowa R.Civ.P. 191 provides in relevant part:

> (a) The party having the burden of proof on the whole action may briefly state his claim, and by what evidence he expects to prove it;
>
> (b) The other party may similarly state his claim and evidence.

Under this rule, counsel should only tell the jury about evidence that counsel has a good faith belief will be offered and admissible.

The defense attorney should have known that police officers would not be permitted to express opinions on fault. *See Grismore v. Consolidated Products Co.,* 232 Iowa 328, 361, 5 N.W.2d 646, 663 (1942). Yet the implication of counsel's statements was that the officers would testify the accident was Thomas Kester's fault and not defendant's. Actually, although invited by the court to make a proffer of any such opinion evidence out of the presence of the jury, counsel did not attempt to offer the officers' views. Defendant called only one officer, and that witness did not express any opinions concerning how the accident happened. It is clear that counsel was at least reckless in his opening statement in representing what would be shown through police testimony. We agree with the trial court that the remarks should not have been made.

■ In finding, however, that plaintiffs were not prejudiced by the remarks and that a different result was improbable even if they had not been made, the court exercised its discretion. *See Rasmussen v. Thilges,* 174 N.W.2d 384, 391 (Iowa 1970). Thus, unless the court abused its discretion in overruling the motions for mistrial and new trial on this ground, the improper statements do not require reversal. We are unable to say, under the whole record, that the trial court exceeded the bounds of fair discretion in its rulings. Therefore the rulings are conclusive on the issue.

II. *The instructions.* Plaintiffs have six areas of complaint about the instructions the court gave or refused to give. Five of them relate to the defense of contributory negligence, and one relates to a charge of negligence against defendant. The contributory negligence defense was submitted separately against each plaintiff. Defendant alleged in bar of Thomas Kester's personal injury claim that he was negligent in failing to maintain a proper lookout, in failing to yield to defendant's vehicle, and

in failing to give warning of the presence of the stalled car. He alleged in bar of Marilyn Kester's loss of consortium and emotional distress claims that she was negligent in failing to give warning of the stalled car. Each plaintiff was accused of negligence separately. The jury was not authorized to impute the negligence of one plaintiff to the other.

A. *Lookout.* Plaintiffs objected to the court's refusal to tell the jury Thomas Kester did not have a duty to maintain a constant lookout for traffic when he went into the street to get his pool cue from the stalled car. The court did not instruct the jury that Thomas had a duty to maintain a constant lookout. It merely told the jury he had a duty to maintain the lookout of "an ordinarily reasonable and prudent person under the same or similar circumstances." The court also said: "It implies being watchful of the pedestrian's own movements in relation to oncoming vehicles and implies seeing oncoming vehicles which could have been seen in the exercise of reasonable care."

 Plaintiffs are correct that a pedestrian does not, as a matter of law, have a duty of constant lookout for approaching vehicles. *See Ackerman v. James,* 200 N.W.2d 818, 826 (Iowa 1972) ("Although a pedestrian has a duty to keep a proper lookout and make use of all of his natural senses to discover the approach of an automobile and to avoid being struck, he is not required to keep a constant lookout and must only apprise the situation with respect to the dangerous approach of an automobile."). In particular facts, however, the trier of fact might find reasonable care required a constant lookout. The situation was sufficiently perilous in the present case that a jury might have made such a finding. In these circumstances it may have constituted a comment on the evidence, and an erroneous one at that, for the court to tell the jury Thomas did not have to maintain a constant lookout for traffic. The court did not err in refusing to so instruct.

 B. *The duty to warn.* Plaintiffs also complain that the court erred in in-

structing about the duty of a person in control of a motor vehicle stopped on a roadway to give notice of the vehicle. They assert the court should not have instructed on their duty under section 321.395 to give notice of the presence of the car by interior or exterior lighting without also instructing on the exception in section 321.396 which excuses the warning when an accident extinguishes lights and the person erects a warning light at the earliest opportunity. The problem with plaintiffs' position is that while the evidence showed the Kester vehicle had no lights on, no evidence was adduced to show how or when they were extinguished. There was no evidentiary support for an instruction on the exception. *See Henneman v. McCalla,* 260 Iowa 60, 75, 148 N.W.2d 447, 456 (1967).

 C. *Marilyn Kester's separate duty.* Plaintiffs also contend the duty could not apply to Marilyn Kester because the evidence did not show she owned the car. The statute applies, however, to a person in control of a stopped vehicle, and the person need not be the owner to be in control. The jury could find from the evidence that Marilyn had at least joint control of the vehicle during the relevant events. The court's ruling on the objection was correct.

Although plaintiffs also assert the instructions on section 321.395 were unduly repetitive, the repetitiveness is sufficiently accounted for by the necessity of applying the duty to the plaintiffs separately.

 D. *The rescue doctrine.* Plaintiffs sought unsuccessfully to have the trial court instruct the jury on the rescue doctrine. In *Leaders v. Dreher,* 169 N.W.2d 570, 576 (Iowa 1969), this court approved the statement of the doctrine appearing in Restatement (Second) of Torts section 472 (1965):

It is not contributory negligence for a plaintiff to expose himself to danger in an effort to save himself or a third person, or the land or chattels of the plaintiff or a third person, from harm, unless the effort itself is an unreasonable one, or the plaintiff acts unreasonably in the course of it.

Plaintiffs argue that the jury could find Thomas Kester was acting reasonably in accordance with this principle when he went back onto the roadway to retrieve his pool cue from the disabled automobile. The pool cue was disassembled and in a case on the front seat. The trial court held as a matter of law that the doctrine was inapplicable because of the magnitude of the risk and the nominal value of the chattel. Just as "the risk which may be reasonably encountered by plaintiff increases as the value of the advantage which can be realized only by encountering it increases," the risk which may reasonably be encountered decreases as the value of the prospective advantage decreases. *Id.* Comment a. We agree with the trial court that it was unreasonable as a matter of law for Thomas to risk his life to prevent the remote possibility of some harm befalling his $90 pool cue. It was not error for the court to refuse to instruct on the rescue doctrine.

E. *Comparative negligence.* Plaintiffs also contend that the court erred in refusing to instruct the jury on the doctrine of comparative negligence rather than contributory negligence. They allege that section 619.17 would deny equal protection of the laws under Iowa Const. Art. I, § 6 unless construed as a comparative negligence provision.

Section 619.17 is a legislative modification of the common law defense of contributory negligence. It requires a defendant to plead the doctrine and to prove plaintiff's negligence was a proximate cause of the injury or damage. *See Schultz v. Gosselink,* 260 Iowa 115, 148 N.W.2d 434 (1967). Except as ameliorated by the statute, the common law doctrine was unchanged.

Plaintiffs contend that to be constitutional the statute must be read as also incorporating a mitigation of damages provision like Iowa R.Civ.P. 97 and section 327D.188. Under rule 97 contributory negligence of a plaintiff merely mitigates damages in suits by employees against employers and by passengers against common carriers. Under section 327D.188 the same rule applies to suits by or in behalf of railroad employees against railroads. Plaintiffs' argument misconceives the source of the classification involved. The classification they attack is accomplished by rule 97 and section 327D.188, not by section 619.17. If the classification is flawed, rule 97 and 327D.188 are vulnerable but not section 619.17. *Cf. Marley v. Kirby,* 271 S.C. 122, 245 S.E.2d 604 (1978) (comparative negligence statute applying only to injuries in motor vehicle accident held to deny equal protection to a person in the classified group). The trial court did not err in overruling plaintiffs' constitutional objection to the court's refusal of their requested instruction on comparative negligence. Plaintiffs did not preserve any other ground of objection to the court's refusal to give the instruction.

F. *Assured clear distance.* Plaintiffs requested an instruction submitting a specification of negligence against defendant alleging his failure to stop his vehicle within the assured clear distance ahead as required by section 321.285. *See Coppola v. Jameson,* 200 N.W.2d 877 (Iowa 1972). The record shows plaintiffs pled three other specifications of negligence in their petition filed December 26, 1978, amended petition filed June 18, 1980, and their amended petition filed during trial on April 6, 1981. They were allegations of excessive speed, improper lookout, and lack of control.

In response to a discovery request asking plaintiffs to set forth the allegations of defendant's negligence upon which they intended to rely, plaintiffs said they were set forth in the petition "and need no elaboration." The response was filed April 12, 1979. Although other supplementary responses were subsequently filed, this response was never amended.

Plaintiffs filed a final pretrial statement on March 19, 1981, containing a statement that their theory of recovery was based on the same three specifications of negligence listed in their petition. In the final pretrial order, the court said the trial would be had on those same three specifications. Plaintiffs did not at any time seek amendment of the pretrial order.

In contending that the court nevertheless erred in refusing their requested instruction, plaintiffs rely on notice pleading as an excuse for not earlier revealing their reliance on the issue. This misconceives the function of notice pleading. It enables a party to postpone the necessity of specificity from the pleading to the pretrial stage, but it does not dispense with it altogether. A party must be specific when requested to do so through appropriate pretrial procedures. See Lemantia v. Sojka, 298 N.W.2d 245, 247 (Iowa 1980).

Notice pleading rules such as Iowa R.Civ.P. 69(a) "are implemented by and depend upon pre-trial procedure for the formulation of issues, and pre-trial examination and summary judgment to disclose, in many cases, the true nature of the action, narrow the trial to real controverted issues, and permit either a plaintiff or a defendant to have judgment, in a relatively short time, where there is no bona fide claim or defense." 2A Moore's Federal Practice ¶ 8.02 at 8–20 (1980). One reason for liberality in pleading requirements is the broad scope of various pretrial devices for discovery of facts and formulation of issues. Id. ¶ 8.13, at 8–115. One of the most important functions of the pretrial conference is to identify, simplify and narrow the issues: "It thus serves a double purpose: on the one hand it eliminates surprise and assists the parties in preparing for trial; on the other hand, it avoids the necessity of preparing for trial upon non-existent issues." 5A Moore's Federal Practice ¶ 16.11, at 16–23 (1980).

The pretrial order controls the subsequent course of the action unless subsequently modified to prevent manifest injustice. Iowa R.Civ.P. 138; Gray v. Schlegel, 265 N.W.2d 156, 158 (Iowa 1978). Under analogous federal rules, the trial court may refuse to instruct the jury on an issue not embodied in the pretrial order. See Miller v. Brazel, 300 F.2d 283, 287 (10th Cir.1962); 6 C. Wright & A. Miller, Federal Practice and Procedure § 1527, at 607 (1971). We believe trial judges have the same authority under our rules.

 In the present case, the assured clear distance issue was not only omitted from the petition where it was not required to be included. It was omitted from the response to discovery and pretrial order where it should have been listed if it was to be an issue in the case. In explaining its refusal to instruct on the issue, the trial court relied in part on plaintiffs' failure to raise the issue in the pretrial proceedings and on its omission from the pretrial order. We hold that the court did not commit reversible error in refusing the instruction. We have no occasion to decide whether the court would have erred in refusing to allow the pretrial order to be amended to include the issue or whether the court would have erred in instructing on the issue over an objection by defendant.

We find no reversible error in the court's rulings on the instructions.

AFFIRMED.